IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLARD E. BARTEL | : | CONSOLIDATED UNDER |
| (Administrator for Estate of | : | MDL 875 |
| William A. Lawrence), | : | |
| ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| A-C PRODUCT LIABILITY TRUST, | : | |
| ET AL., | : | E.D. PA CIVIL ACTION NO. |
| | : | 5:11-45628-ER |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          December 16, 2016

This case was transferred in August 2011 from the United State District Court for the Northern District of Ohio to the United States District Court for the Eastern District of Pennsylvania, where it became part of the consolidated asbestos products liability multidistrict litigation (MDL 875). The case was assigned to the Court's maritime docket ("MARDOC").

Willard E. Bartel and David E. Peebles ("Plaintiffs"), Administrators of the Estate of William A. Lawrence, allege that Mr. Lawrence ("Decedent" or "Mr. Lawrence") was exposed to asbestos while working aboard various ships. Plaintiffs assert that Decedent developed an asbestos-related illness as a result of his exposure to asbestos aboard those ships.

For the reasons that follow, the Court will deny Defendants' motion.

## I.   BACKGROUND

On August 28 1996, Mr. Lawrence brought claims for non-malignant asbestos-related disease (now pursued by Plaintiffs after the death of Mr. Lawrence) against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). A little over two months later, on December 11, 1996, Mr. Lawrence filed for bankruptcy pursuant to Chapter 7 of the bankruptcy code, without listing his asbestos claims as an asset in the bankruptcy filing (the "First Bankruptcy"). By way of Order dated March 14, 1997, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Mr. Lawrence

---

[1]   Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]   On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show

was discharged from bankruptcy in the First Bankruptcy action
very shortly thereafter, on March 27, 1997. Approximately eight
years later, on February 1, 2005, Mr. Lawrence again filed for
bankruptcy pursuant to Chapter 7 of the bankruptcy code, again
without listing his asbestos claims as an asset in that
bankruptcy filing (the "Second Bankruptcy"). He was discharged
from bankruptcy in the Second Bankruptcy action on May 9, 2005.
Approximately four years later, on or about December 8, 2009,
Mr. Lawrence was diagnosed with colon cancer, giving rise to
claims for a malignant asbestos-related disease. On August 1,
2011, the MDL Court reinstated the asbestos action (now being
pursued by Plaintiffs), which had been dismissed by Judge Weiner
in 1996. A summary of this timeline of events is as follows:

---

(1) "satisfactory evidence [of] an asbestos-related personal
injury compensable under the law," and (2) "probative evidence
of exposure" to a defendant's products. Id. at *5. On March 14,
1997, Judge Weiner applied that dismissal order to all then-
pending MARDOC cases (including the present case) and all future
MARDOC cases that had not yet been filed. In 2002, the MDL Court
ordered that administratively dismissed cases remain active for
certain purposes (e.g., entertaining settlement motions and
orders, motions for amendment to the pleadings, etc.), and in
2003, clarified that the administrative dismissals were "not
intended to provide a basis for excluding the MARDOC claimants
from participating in settlement programs or prepackaged
bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x
270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab.
Litig. (No. VI), Order Granting Relief to MARDOC Claimants with
Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb.
19, 2003)).

- August 28, 1996 - Asbestos action filed
    (non-malignancy claims)
- December 11, 1996 – First Bankruptcy action filed
- March 14, 1997 - Asbestos action administratively
    dismissed
- March 27, 1997 – First Bankruptcy action discharge
- February 1, 2005 – Second Bankruptcy action filed
- May 9, 2005 – Second Bankruptcy action discharge
- December 8, 2009 - Cancer diagnosis (malignancy claims)
- August 2011 - Asbestos action reinstated by MDL Court

The Thompson Hine Shipowners have moved for summary
judgment, arguing that (1) Plaintiff's claims are barred by way
of judicial estoppel because Plaintiff failed to disclose the
asbestos action as an asset in his bankruptcy filings, and (2)
Plaintiff does not have standing to pursue the asbestos action
because it is now owned by one (or both) of the bankruptcy
estates.

## II.  LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.    The Applicable Law

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber

Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362–63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

A. Judicial Estoppel

Defendants contend that all of Plaintiff's claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Lawrence took irreconcilably inconsistent positions in his bankruptcy proceedings and the instant proceeding. Defendants state that Mr. Lawrence concealed the existence of his asbestos claims when filing for bankruptcy (both times) by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current asbestos action (which was filed less than three months before the filing of the bankruptcy action). They further assert that a finding of bad faith is

---

[3]       "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

warranted because Mr. Lawrence had knowledge of the asbestos claims each time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy).[4]

Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the non-malignancy asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Without clearly distinguishing between his non-malignancy claims and his malignancy claims – and without

---

[4]      In particular, Defendants assert that, even with respect to the First Bankruptcy, there is evidence of bad faith because, given that the asbestos action was filed less than three months before the First Bankruptcy action was filed (and was not dismissed until over three months after the First Bankruptcy action was filed), Mr. Lawrence must have been aware of his asbestos claims during the pendency of the First Bankruptcy, as he must have been in communications with his asbestos counsel about various matters, including his sailing history (for preparation of Initial Data Forms), other information for preparation of his (and other of his counsel's clients') asbestos lawsuits, and the submission of (and possibly receipt of payments from) asbestos bankruptcy trusts. Defendants do not cite to any specific piece of evidence in the record that indicates Mr. Lawrence was in communication with asbestos counsel prior to filing the First Bankruptcy – and, presumably, rely upon the mere fact that the asbestos action was in fact filed.

explicitly acknowledging that there were two separate bankruptcy actions pending during the course of Mr. Lawrence's asbestos action – Plaintiffs contend that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Lawrence did not take inconsistent positions between his bankruptcy filing(s) and the present asbestos action because (1) his non-malignancy claim was dismissed by Judge Weiner's May 1996 dismissal order (indirectly, by way of the March 1997 dismissal order, which Plaintiffs appear to suggest was made retroactive such that Plaintiff's case was already dismissed in August of 1996 when it was filed), and (2) his colon cancer diagnosis was not made (and, therefore, his colon cancer claims did not arise) until after his bankruptcy action(s) had been closed, such that he was not required to list these claims as assets in his bankruptcy action(s). Moreover, Plaintiffs argue that even if Mr. Lawrence should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Lawrence acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing(s).

B.   <u>Real Party in Interest/Standing</u>

1.   <u>All Claims (Non-Malignant and Malignant Claims)</u>

In the alternative, Defendants contend that Plaintiffs have no right to pursue the claims (either the non-malignancy claims or the malignancy claims) because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Lawrence did not report these asbestos claims as assets in the bankruptcy filings, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the corresponding bankruptcy estate(s) when the bankruptcy petitions were filed. As a result, they assert that only the bankruptcy trustees can administer the claims.

Defendants also argue that, because Mr. Lawrence did not reveal any of the asbestos claims, such that they were never properly scheduled as assets in either of the bankruptcy actions, the trustees were incapable of passing those claims back to Mr. Lawrence through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy actions have both closed, the rights to the asbestos claims did not revert back to Mr. Lawrence upon those closures and instead remain with the trustee(s), such that Plaintiffs may not now pursue them.

With respect to the non-malignancy claims, Plaintiffs assert that, because these claims were "uncertain" during his bankruptcy, they were never assets of the bankruptcy estate (regardless of whether or not they were disclosed). Therefore, according to Plaintiffs, they (and not the bankruptcy trustee) are the proper party to pursue these claims.

With respect to the malignancy claims, Plaintiffs assert that, because the colon cancer diagnosis was not made (and, therefore, the colon cancer claims did not arise) until after Mr. Lawrence was discharged from bankruptcy, they were never assets of the bankruptcy estate – and Mr. Lawrence could not have been required to disclose them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

2.   Malignancy Claims

With respect to the malignancy claims, Defendants also assert, as another alternative, that Plaintiffs' claims for malignant asbestos-related disease (based upon his diagnosis of colon cancer, which occurred after both the First and Second Bankruptcy actions had been closed) are property of the estate, such that Plaintiffs also lack standing to pursue these claims – despite the fact that the diagnosis of colon cancer did not occur until after Mr. Lawrence's bankruptcy actions were filed – because those claims are sufficiently rooted in his pre-

bankruptcy past to constitute property of the estate.[5] Specifically, Defendants argue that, under Segal, any new claim that is "sufficiently rooted in the pre-bankruptcy past" should be included in the debtor's bankruptcy estate, 382 U.S. at 380, and that, since the asbestos exposures (and the non-malignant asbestos injury) arose pre-bankruptcy, any injuries arising therefrom (such as Mr. Lawrence's colon cancer claims) should be considered part of the bankruptcy estate because they are "sufficiently rooted in the pre-bankruptcy past."

Plaintiffs assert that the claims for malignant asbestos-related disease (based upon the post-petition diagnosis of colon cancer) are not property of the estate – and never were – because they did not arise until after Mr. Lawrence had been discharged from bankruptcy. In support of this argument, Plaintiffs cite to this MDL's court's decision, Nelson v. A.W. Chesterton, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.), holding that maritime law follows the "two-disease rule" such that Mr. Lawrence's colon cancer diagnosis gave rise to a

---

[5]      In support of this contention, Defendants rely primarily upon Segal v. Rochelle, 382 U.S. 375, 380 (1966), and In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000)(involving a post-petition asbestos claim). In addition, Defendants also cite to a number of cases that did not involve an asbestos claim: In re Webb, 484 B.R. 501 (Bankr. M.D. Ga. 2012); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011); In re Strada Design Assocs., Inc., 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005); and In re Patterson, 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008).

malignant disease that constitutes a second and separate cause of action from that initially filed for his non-malignant asbestos-related disease. As such, Plaintiffs seems to suggest that, even if the Court should determine that the non-malignancy claims are property of the bankruptcy estate that Plaintiffs are now barred from pursuing, the malignancy claims (for colon cancer) are not property of the estate (and never were), such that Plaintiffs may still pursue those claims free and clear of any debts not fully paid to creditors in the bankruptcy action(s).

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every

'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." <u>Freedom Med., Inc. v. Gillespie</u>, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting <u>Krystal Cadillac</u>, 337 F.3d at 323).

  Once the debtor has filed his bankruptcy petition, the bankruptcy estate - which in a Chapter 7 case is controlled by the trustee - "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." <u>In re Kane</u>, 628 F.3d at 637 (internal quotation marks and citations omitted). Additionally, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." <u>Allston-Wilson v. Philadelphia Newspapers, Inc.</u>, No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006); <u>see also</u> <u>In re Kane</u>, 628 F.3d at 637 ("an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting <u>Hutchins v. IRS</u>, 67 F.3d 40, 43 (3d Cir. 1995)).

  Typically, the only interests that a bankruptcy estate owns are those that a plaintiff has at the time the petition is

filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000)
(concluding that the bankruptcy "estate encompasses everything
that the debtor owns upon filing a petition") (emphasis added);
11 U.S.C. § 541(a)(1). However, any new, post-petition interest
(such as a legal claim) that is "sufficiently rooted in the pre-
bankruptcy past" can also constitute part of the debtor's
bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

         Judicial estoppel is a "doctrine that seeks to prevent
a litigant from asserting a position inconsistent with one that
she has previously asserted in the same or in a previous
proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and
citations omitted). At the heart of judicial estoppel is the
idea that "absent any good explanation, a party should not be
allowed to gain an advantage by litigation on one theory, and
then seek an inconsistent advantage by pursuing an incompatible
theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller &
Edward H. Cooper, Federal Practice and Procedure § 4477 (1981),
p. 782). However, this doctrine is "not intended to eliminate
all inconsistencies no matter how slight or inadvertent they may
be." Id. It "should only be applied to avoid a miscarriage of
justice" and "is only appropriate when the inconsistent
positions are tantamount to a knowing misrepresentation to or
even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

(internal quotation marks and citations omitted). The "doctrine
of judicial estoppel does not apply 'when the prior position was
taken because of a good faith mistake rather than as part of a
scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362
(quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.
1980)). "It is a fact-specific, equitable doctrine, applied at
courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir.
2010).

The Third Circuit Court of Appeals has formulated this
test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith –
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.
Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.
2001)). The Third Circuit has further concluded that a
"rebuttable inference of bad faith arises when averments in the
pleadings demonstrate both knowledge of a claim and a motive to
conceal that claim in the face of an affirmative duty to
disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at
416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact of nondisclosure." <u>Ryan Operations</u>, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, <u>inter alia</u>, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. <u>See</u> <u>id.</u> at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); <u>Krystal Cadillac</u>, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

## V.   ANALYSIS

### A.   <u>Judicial Estoppel</u>

The Court considers Defendants' argument regarding judicial estoppel separately as to each set of claims (non-malignancy claims and malignancy claims) and as to each of the two bankruptcies in which Defendants assert the claims should have been disclosed.

1.   <u>Non-Malignancy Claims</u>

a.   <u>First Bankruptcy</u>

Defendants contend that Mr. Lawrence's non-malignancy asbestos claims were assets whose omission from Schedule B of the First Bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that the non-malignancy asbestos claims were dismissed (and remained dismissed) throughout the entire pendency of the First Bankruptcy action (i.e., were not assets) and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

i.   <u>Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?</u>

It is undisputed that Mr. Lawrence did not list his non-malignancy asbestos claims (or any other legal claims) as assets in his First Bankruptcy filing. Mr. Lawrence's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See <u>Krystal Cadillac-Oldsmobile</u>, 337 F.3d at 322. By failing to include his non-malignancy asbestos claims as an asset in his bankruptcy filings in the First Bankruptcy, Plaintiff initially represented to the Bankruptcy Court that such an asset did not exist. Now, in the present action, Plaintiff is pursuing those

17

same claims that he represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

      ii.  Step Two: Did Plaintiff Change His Position In Bad Faith

Mr. Lawrence's bankruptcy action was filed (1) less than three months after the asbestos action was filed, (2) before Judge Weiner had issued his March 1997 order administratively dismissing actions in the MDL filed after his May 1996 order, and (3) at a point in time when the concededly stagnant MDL had only been in existence for approximately four years (as opposed to many other plaintiffs' cases, which were filed ten or fifteen years after the MDL became stagnant). As such, it is difficult to imagine that Plaintiff held a genuine belief at that time that his asbestos claims were merely "hypothetical," "tenuous," or "fanciful," such that he needed not to disclose them as assets in his bankruptcy petition. Freedom Med., Inc. v. Gillespie, 06-cv-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal Cadillac, 337 F.3d at 323).

However, while the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to

18

disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit
has also noted that an inference of bad faith does not always
arise from "the mere fact of non-disclosure." Ryan Operations,
81 F.3d at 364. The Court has reviewed the bankruptcy petition
filed by Plaintiff, see ECF No. 55-2, and concludes that, to the
extent the law generally requires disclosures of the type of
claims that were pending at the time of the bankruptcy filing,
an omission of those claims may very well have been based on a
good faith mistake of what was required by the documents, or a
simple incorrect assessment of the viability of his claims
(given that he may have been aware of Judge Weiner's May 1996
order administratively dismissing all other then-pending
asbestos actions). See Ryan Operations, 81 F.3d at 362. In the
absence of evidence that the omission was deliberate, the Court
finds that the failure to disclose the non-malignancy asbestos
claims was not in bad faith, nor an attempt to play "fast and
loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d
at 319-20. Therefore, the Court does not find that Plaintiff
changed his position "in bad faith" such that it warrants the
application of judicial estoppel. See Ryan Operations, 81 F.3d
at 363. Accordingly, Defendant's motion for summary judgment on
grounds of judicial estoppel will be denied with respect to non-
disclosure of the non-malignancy claims in the First Bankruptcy.
See Anderson, 477 U.S. at 248-50.

b.   <u>Second Bankruptcy</u>

Defendants contend that Mr. Lawrence's non-malignancy asbestos claims were assets whose omission from Schedule B of the Second Bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims were in a state of administrative dismissal at that time (and, thus, "uncertain" at the time of that action), they were, in essence, not assets and, therefore did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

i.   <u>Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?</u>

It is undisputed that Mr. Lawrence did not list his non-malignancy asbestos claims as assets in his Second Bankruptcy filing (although he did list other legal claims there). Mr. Lawrence's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. <u>See</u> <u>Krystal Cadillac-Oldsmobile</u>, 337 F.3d at 322. It is undisputed that Mr. Lawrence knew of his non-malignancy asbestos claims at the time of the Second Bankruptcy. By failing to include those asbestos claims as an

20

asset in his Second Bankruptcy filings, Mr. Lawrence represented to the Bankruptcy Court that such an asset did not exist. Now, in this Court, Plaintiffs are pursing those same claims that Mr. Lawrence represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

      ii.  Step Two: Did Plaintiff Change His Position In Bad Faith

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[6] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman would have had the foresight to know in 2005 when he filed for Chapter 7 bankruptcy (in the Second Bankruptcy), that six years later a new presiding Judge of the MDL would

---

[6]      "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

reopen his asbestos case, albeit fifteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Mr. Lawrence's case - was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the non-malignancy asbestos claims in the Second Bankruptcy was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[7] Accordingly, the Court does not find that Mr. Lawrence changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[8] Accordingly, Defendant's motion for

---

[7]    While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Plaintiff, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[8]    Additionally, the Court has reviewed the bankruptcy petition filed by Mr. Lawrence, see ECF No. 55-2 at 59-60, and

summary judgment on grounds of judicial estoppel will be denied with respect to non-disclosure of the non-malignancy claims in the Second Bankruptcy. See Anderson, 477 U.S. at 248-50.

2.   Malignancy Claims (Second Bankruptcy)

Because Mr. Lawrence's colon cancer diagnosis occurred several years after the Second Bankruptcy was closed (and there is no evidence in the record that he knew of this illness, or that it had manifest itself at any time prior to the First or Second Bankruptcy[9]), it is clear (and does not appear to be contested by Defendants), that Mr. Lawrence was not required to identify his malignancy claims in either his First Bankruptcy petition or his Second Bankruptcy petition. Therefore, with respect to Plaintiffs' malignancy claims, the Court need not analyze Defendants' judicial estoppel argument as to the First

---

concludes that, to the extent the law generally requires disclosures of the type of claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been a good faith mistake based upon a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

[9]      The earliest date on which the evidence indicates he had knowledge of this injury or its cause (or that it had manifest itself) is the date on which his colon cancer was diagnosed (which was in December of 2009). Under the "discovery rule" recognized by maritime law in determining the accrual of an asbestos-related claim, there is no evidence that Mr. Lawrence's malignancy claims had accrued on any date prior to the date on which he filed his First or Second Bankruptcy petition(s). Nelson, 2011 WL 6016990.

Bankruptcy (and instead analyzes the argument only as to the
Second Bankruptcy).

      B.    <u>Real Party in Interest/Standing</u>

          1.   <u>Non-Malignancy Claims</u>

Defendants next contend that, despite Mr. Lawrence's
failure to list his non-malignancy asbestos claims on his
bankruptcy petitions (First Bankruptcy or Second Bankruptcy),
those claims now belong to (one or both of) the bankruptcy
trustee(s) (pursuant to 11 U.S.C. § 541(a)(1)) such that
Plaintiffs have no right to pursue them. Specifically,
Defendants argue that, even though Mr. Lawrence did not report
his non-malignancy asbestos claims as assets in the bankruptcy
filings, as required by 11 U.S.C. § 541(a)(1), those claims
automatically became part of one or both of the bankruptcy
estate(s) when the bankruptcy petitions were filed. As a result,
they assert that only the bankruptcy trustee(s) can administer
the claims.

Defendants also assert that, because Mr. Lawrence did
not properly schedule those claims as assets, the trustees (of
either or both of the bankruptcy actions) were incapable of
passing those claims back to Mr. Lawrence through abandonment of
any remaining and unpursued assets as would normally happen
pursuant to 11 U.S.C. § 554. As such, Defendants assert that,

even though the bankruptcy actions have both closed, the rights
to the non-malignancy asbestos claims did not revert back to Mr.
Lawrence upon those closures and instead remain with the
trustee(s), such that Plaintiffs may not now pursue them. Here,
the Defendants' position has some initial merit.

Once a debtor has filed his bankruptcy petition, the
bankruptcy estate, which is controlled by the trustee,
"encompasses everything that the debtor owns upon filing a
petition, as well as any derivative rights, such as property
interests the estate acquires after the case commences." In re
O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). "It is the trustee,
and not the debtor, who has the capacity to pursue the debtor's
claims." In re Kane, 628 F.3d at 637 (internal quotation marks
and citations omitted). It is also true that, "[p]ursuant to 11
U.S.C. § 554(d), a cause of action, which a debtor fails to
schedule, remains property of the estate because it was not
abandoned and not administered." Allston-Wilson, No. 05-4056,
2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting
Hutchins, 67 F.3d at 43).

In the instant case, Plaintiff erred by failing to
disclose his non-malignancy asbestos claims when he filed his
First Bankruptcy petition – and again erred by failing to
disclose these claims when he filed his Second Bankruptcy
petition. While the Court has held that this error was not in

bad faith and thus not barred by judicial estoppel, these claims
are nonetheless part of the First (and/or possibly the Second)
Bankruptcy Estate as they were not only potential claims, but
were realized claims pending before the Court, and thus needed
to be disclosed. Under these circumstances, the claims remain
part of the First Bankruptcy estate and the trustee to that
estate (the "First Bankruptcy Trustee" or "First Trustee")
remains the real party in interest for such claims, even after
the bankruptcy was closed. See Killmeyer v. Oglebay Norton Co.,
817 F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's
motion to substitute for the plaintiff as the real party in
interest since the debtor's unscheduled pre-petition claim could
only be administered by the trustee); Saellam v. Norfolk S.
Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6,
2007) (concluding that "[b]ecause Plaintiff's cause of action is
part of the bankruptcy estate, and has not been abandoned by the
trustee, I hold Plaintiff is not the real party in interest and
that only the trustee in bankruptcy, as sole representative of
Plaintiff's estate, has standing to pursue the instant
lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that
where it was undisputed that the plaintiffs cause of action
arose before her bankruptcy and that she failed to list the
claim on her bankruptcy schedule, only the trustee could pursue
the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410,

413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not belong to the plaintiff and the trustee had not sought to intervene).

Having held that the First (and/or possibly the Second) Bankruptcy Trustee, and not Plaintiff, is the real party in interest of the instant non-malignancy asbestos claims, the Court must determine the appropriate remedy. Given that these claims belong to the First (and/or possibly the Second) Bankruptcy estate and that, therefore, distributions of any recovery by the First (and/or possibly the Second) Bankruptcy Trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, that trustee(s) shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the non-malignancy claims.

The Court does not underestimate the practical difficulties involved. Both the First and Second Bankruptcy cases are now closed in the Bankruptcy Court for the Eastern District of Virginia, and the identity and whereabouts of the First (and Second) Trustee are unknown to this Court. The Court notes that the First Trustee has priority on these claims over the Second Trustee (such that the Second Trustee owns only such portion/value of the claims that remain after the claims have

either been abandoned by the First Trustee or have fully satisfied payment owed to all creditors to the First Bankruptcy). To expedite the process of putting the First Trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of <u>both</u> (a) Mr. Lawrence's First Bankruptcy case in the Bankruptcy Court for the Eastern District of Virginia (No. 96-bk-27866-DHA), and (b) Mr. Lawrence's Second Bankruptcy case in the Bankruptcy Court for the Eastern District of Virginia (No. 05-bk-70515-DHA); (2) ascertain the identity of <u>both</u> the First Bankruptcy Trustee and the Second Bankruptcy Trustee; and (3) serve a copy of said memorandum and order upon those trustees at their last known addresses.

The First Bankruptcy Trustee will have sixty (60) days from the date of the filing of the order on the docket of the Bankruptcy Court to seek to reopen the Bankruptcy action and to advise this Court that he/she intends to prosecute the instant non-malignancy asbestos claims.[10] In such event, the Court will

---

[10] The trustee will be ordered to provide a signed letter certifying his/her (a) filing of a petition with the Bankruptcy Court to reopen Plaintiff's bankruptcy proceedings and (b) intention to be substituted as party-plaintiff in the instant case (substituting only as to the non-malignancy claims, with current Plaintiffs continuing as the named plaintiffs with respect to the malignancy claims).

stay the instant proceedings while the bankruptcy estate is reopened (providing monthly updates to the Court on the status of the petition to reopen).[11] Once the bankruptcy estate is reopened, the First Bankruptcy Trustee will have thirty (30) days from the date of the reopening of the estate to move in this Court to substitute himself/herself as the party-plaintiff in this case (as to the non-malignancy claims only).

In the event that (1) the First Bankruptcy Trustee fails to advise this Court within sixty (60) days from the date the order is filed on the docket of the Bankruptcy Court that he/she intends to proceed with the instant non-malignancy claims,[12] (2) he/she declines to do so, (3) he/she fails to

---

If the bankruptcy proceedings are reopened, the trustee will have thirty (30) days from the date of the Bankruptcy Court's order reopening those proceedings to move in the instant case to be added as a party-plaintiff (substituting as to the non-malignancy claims only).

[11] Once the trustee has petitioned the Bankruptcy Court to reopen the bankruptcy proceedings, and until a motion for addition as a party-plaintiff (substituting only for the non-malignancy claims) has been filed by the trustee, he/she will be required to file a monthly status update with this Court (by the last day of each month), (a) informing the Court of the status of the petition to reopen the bankruptcy proceedings, and (b) certifying his/her continuing intention to pursue the non-malignancy claims in the instant case.

[12] It is not clear whether the trustee's failure to respond to the Court's order would constitute an express or implied abandonment of the instant non-malignancy claims under 11 U.S.C. § 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86 (D.D.C. 1991) (noting that the mere fact the trustee was notified of the pending lawsuit, but failed to

provide a monthly status update, or (4) he/she fails to move to

be substituted as party-plaintiff (as to the non-malignancy

claims only) within thirty (30) days of the reopening of the

bankruptcy action, in accordance with the analysis to follow

shortly, the Court will give the trustee of the Second

Bankruptcy action an additional thirty (30) days[13] to provide

this Court with notice that he/she intends to petition the

Bankruptcy Court for the Eastern District of Virginia to reopen

the bankruptcy proceedings of the First Bankruptcy Action and

move in that court to compel abandonment of the instant non-

---

administer it, would not necessarily mandate a finding of
implied abandonment). Importantly, however, the party seeking to
demonstrate abandonment bears the burden of persuasion. Hanover
Ins. Co. v. Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir.
1974). In bankruptcy proceedings, the trustee's position is
similar to that of a fiduciary to both the debtor and creditors.
Under the bankruptcy code, the trustee must "investigate the
financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and
"collect and reduce to money the property of the estate," 11
U.S.C. § 704(a)(1). Moreover, the trustee "has the duty to
maximize the value of the estate," Commodity Futures Trading
Comm'n v. Weintraub, 471 U.S. 343, 353 (1985), and "in so doing
is bound to be vigilant and attentive in advancing the estate's
interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In
sum, it is the trustee's duty to both the debtor and the
creditor to realize from the estate all that is possible for
distribution among the creditors." Id. (citing 4 Collier,
Bankruptcy ¶ 704.01 (15th ed.)).

[13]     This would be ninety (90) days from the date the
memorandum and order are filed on the Bankruptcy Court's docket
for the First Bankruptcy (for events pursuant to (1) or (2)); or
thirty (30) days from the date of the pertinent failure pursuant
to (3) or (4).

malignancy claims. <u>See</u> 11 U.S.C. § 554(b).[14] If such notice is

timely provided to this Court, the Court will stay the instant

---

[14]       The Second Trustee will be ordered to provide a signed
letter certifying his/her intention to petition the Bankruptcy
Court to reopen the First Bankruptcy proceedings and move the
Bankruptcy Court to compel abandonment of the instant claims.
For the reasons alluded to in footnote 12 herein, the Bankruptcy
Court for the Eastern District of Virginia is the court in the
best position to provide the proper parties (including any
potential creditors) with sufficient notice of Plaintiffs'
motion to compel abandonment of the instant non-malignancy
claims. <u>See</u> 11 U.S.C. § 554(b).

       The Second Trustee will also be ordered to provide a
signed letter confirming that he/she has petitioned the
Bankruptcy Court to reopen Mr. Lawrence's Second Bankruptcy
proceedings and certifying his/her intention to be added as a
party-plaintiff in the instant case (substituting only as to the
<u>non-malignancy</u> claims, with the Administrators of Mr. Lawrence's
estate (Willard E. Bartel and David E. Peebles) continuing as
the named Plaintiffs with respect to the malignancy claims).

       Once the Second Trustee has petitioned the Bankruptcy
Court to reopen the Second Bankruptcy proceedings, and until a
motion for addition as a party-plaintiff (substituting only for
the non-malignancy claims) has been filed by the Second Trustee,
he/she will be required to file a monthly status update with
this Court (by the last day of each month), (a) informing the
Court of the status of the petition to reopen the Second
Bankruptcy proceedings, and (b) certifying his/her continuing
intention to pursue the non-malignancy claims in the instant
case.

       If the Second Bankruptcy proceedings are reopened, the
Second Trustee will have thirty (30) days from the date of the
bankruptcy court's order reopening those proceedings to move in
the instant case to be added as a party-plaintiff (substituting
as to the non-malignancy claims).

proceedings pending the disposition of the motion in the

Bankruptcy Court.[15]

If notice is not received from the First or Second

Bankruptcy Trustee in the specified timeframe, the Court will

then provide Plaintiffs with an additional thirty (30) days to

move in the Bankruptcy Court to reopen both the First and Second

Bankruptcy Actions and to move to compel abandonment of the non-

malignancy claims in each of those actions.[16]

If notice is not received from Plaintiffs or the First

or Second Trustee within the specified timeframes, the Court may

dismiss Plaintiff's non-malignancy claims for failure to

substitute the real party in interest (leaving pending the

malignancy claims). See Fed. R. Civ. P. 17(a)(3) ("The court may

not dismiss an action for failure to prosecute in the name of

the real party in interest until, after an objection, a

---

[15]      Plaintiffs will only be permitted to pursue the non-
malignancy asbestos claims if and when the claims have been
either abandoned by both the First and Second Bankruptcy estates
and/or have otherwise reverted back to Plaintiff – e.g., by
payment in full to all creditors.

[16]      This would be 120 days from the date the memorandum
and order are filed on the Bankruptcy Court's docket for the
First Bankruptcy (for events pursuant to (1) or (2)); or ninety
(90) days from the date of the pertinent failure pursuant to (3)
or (4).

        Plaintiffs will be ordered to provide a signed letter
certifying their intention to petition the Bankruptcy Court to
reopen Mr. Lawrence's Second Bankruptcy proceedings and move the
Bankruptcy Court to compel abandonment of the non-malignancy
claims.

reasonable time has been allowed for the real party in interest to ratify, join, or be substituted.").

At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice as to Plaintiff's <u>non-malignancy</u> claims. <u>Anderson</u>, 477 U.S. at 248-50.

### 2. <u>Malignancy Claims</u>

There is no evidence in the record that Mr. Lawrence knew of his malignancy asbestos claims (or the illness underlying those claims) at the time he filed the First or Second Bankruptcy petition. The Court has held that, absent such evidence, Mr. Lawrence was not required to schedule those claims (initially or by way of amendment). The question then is whether the claims were nonetheless property of the First and/or Second Bankruptcy estate by operation of law, pursuant to the rule of <u>Segal</u>. Specifically, the Court must determine whether Mr. Lawrence's malignancy asbestos claims were sufficiently rooted in the pre-First Bankruptcy (and/or pre-Second Bankruptcy) past to be property of the First (and/or Second) Bankruptcy estate. <u>Id.</u>

A bankruptcy estate typically owns only those interests that a plaintiff has at the time a petition is filed,

In re O'Dowd, 233 F.3d at 202 , and 11 U.S.C. § 541(a)(1).
However, the Supreme Court has held that, when a cause of action
arises after the filing of a bankruptcy petition, the claim
belongs to the bankruptcy estate only if it is "sufficiently
rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380.
Therefore, the Court must determine whether Mr. Lawrence's
malignancy asbestos claims were sufficiently rooted in the pre-
First (and/or pre-Second) Bankruptcy past to be property of the
First (and/or Second) Bankruptcy estate. Id. In doing so, it
will consider cases relied upon by the Thompson Hine Defendants
to support their contention that the claims are sufficiently
rooted in the pre-bankruptcy estate to constitute property of
the estate.

     In Segal, the Supreme Court concluded that a tax
refund originating from a tax return filed before the bankruptcy
petition was property of the estate, even though the refund was
not payable until after the petition was filed. Segal, 382 U.S.
at 379-82. In explaining its rationale in Segal, the Supreme
Court stated:

> The main thrust of [the relevant section of the
> bankruptcy code] is to secure for creditors everything
> of value the bankrupt may possess in alienable or
> leviable form when he files his petition. To this end
> the term "property" has been construed most generously
> and an interest is not outside its reach because it is
> novel or contingent or because enjoyment must be
> postponed. E.g., Horton v. Moore, 6 Cir., 110 F.2d 189
> (contingent, postponed interest in a trust);

Kleinschmidt v. Schroeter, 9 Cir., 94 F.2d 707
(limited interest in future profits of a joint
venture); see 3 Remington, Bankruptcy ss 1177—1269
(Henderson ed. 1957). However, limitations on the term
do grow out of other purposes of the Act; **one purpose
which is highly prominent and is relevant in this case
is to leave the bankrupt free after the date of his
petition to accumulate new wealth in the future.**

.          .          .

        Temporally, two key **elements pointing toward
realization of a refund existed at the time these
bankruptcy petitions were filed**: taxes had been paid
on net income within the past three years, and the
year of bankruptcy at that point exhibited a net
operating loss.

382 U.S. at 379 (emphasis added). The facts of Segal are

distinguishable from those of the present situation because,

unlike the expected tax refund in Segal, there is no evidence

that Mr. Lawrence knew of his malignancy asbestos claims at the

time he filed his First or Second Bankruptcy. As the Supreme

Court noted in Segal, one of the primary purposes of allowing

bankruptcy filings and limiting the forfeiture of assets to

those existing at the time of the filing is to allow the

bankrupt to start afresh and accumulate new wealth in the

future. In short, the rationale of Segal (and the bankruptcy law

interpreted by the Supreme Court therein) does not support a

decision to preclude Plaintiffs from obtaining now a recovery on

a claim that Mr. Lawrence did not know existed at the time he

filed his First or Second Bankruptcy. This is true despite the

fact that the alleged asbestos exposure giving rise to the claim

occurred long before either bankruptcy was filed – a factual scenario considered by a bankruptcy court in Michigan in <u>In re Richards</u>, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), upon which Defendants rely.

Like the case at hand, <u>In re Richards</u> involved an asbestos claim for an illness that (apparently, and with no evidence in the record to the contrary) was diagnosed after a debtor had filed for bankruptcy and while the bankruptcy action was still pending. The court held (in accord with <u>Segal</u>) that, "in determining whether a claim is property of the bankruptcy estate, the test is not the date that the claim accrues under state law" but "whether the claim is 'sufficiently rooted in the pre-bankruptcy past'." 249 B.R. at 861. The court concluded that the debtor's asbestos-related cancer claim was sufficiently rooted in his pre-petition past and should therefore be considered part of the bankruptcy estate based on the two facts that: (1) "All of the allegedly wrongful conduct giving rise to the debtor's claim occurred prepetition," and (2) "although the diagnosis was made seven months after the petition was filed, that timing appears to have been more a result of happenstance than of medical necessity. It appears likely that both the <u>onset of the debtor's disease</u> and a <u>greater portion of its progress</u> occurred before he filed his petition." <u>Id.</u> (emphasis added). The Court notes that <u>In re Richards</u> is not binding on this court

and, in addition, involved claims that were governed by Michigan law (under which the causes of action accrued when the plaintiff "knew or should have known" of his asbestos-related illness, id.) rather than maritime law (under which an asbestos cause of action accrues when the illness manifests itself, or when the plaintiff has knowledge of the injury and its cause, Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)).

In the case at hand, there is no evidence in the record that Mr. Lawrence knew of his malignant asbestos illness, or experienced any symptoms of that illness, until several years after the First and Second Bankruptcy petitions were filed and those actions closed. As such, unlike In re Richards (where an asbestos claim accrued under the applicable law when a plaintiff "should have" known of his illness), it cannot be concluded that Mr. Lawrence's malignant asbestos claim accrued (under maritime law) prior to the filing of his First or Second Bankruptcy petition. Moreover, without evidence in the record to the contrary, the Court is unwilling to conclude that the onset of Mr. Lawrence's malignant asbestos-related disease – or any of its progress - occurred prior to the date of the filing of his First or Second Bankruptcy petition. This is because mere pre-petition exposure to asbestos did not necessarily result in an injury to Mr. Lawrence. It was not until that illness actually manifest itself that the exposure gave rise to a claim – and an

interest over which the bankruptcy trustee could potentially have ownership. Therefore, even when applying the rationale of In re Richards, the Court must conclude that, although the alleged asbestos exposure giving rise to the malignancy asbestos claims occurred prior to the filing of his First and Second Bankruptcy petitions, Mr. Lawrence's malignancy asbestos claims are not "sufficiently rooted" in his pre-bankruptcy past to be deemed property of either of the two bankruptcy estates.

Defendants also cite to a number of cases that did not involve an asbestos claim. In re Webb is factually analogous insofar as it involved a claim based upon a latent physical injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a debtor received a post-petition class action settlement for congestive heart failure he was believed to have suffered as a result of having taken a particular medication years earlier. Although the congestive heart failure occurred two years prior to the filing of the bankruptcy petition, the debtor did not know that there was any link between the medication and congestive heart failure until well after his bankruptcy action had been filed and closed. Upon the bankruptcy trustee's petitioning for a reopening of the bankruptcy action to recover this class action settlement from the debtor in order to administer it as part of the bankruptcy estate, the court concluded that the product liability claim was property of the

bankruptcy estate despite the fact that the debtor did not become aware of the claim until after his bankruptcy action was filed (and closed). Importantly, however, the court's decision turned entirely on its reluctant acknowledgment that, under the law applicable therein, the "discovery rule" did not apply to the debtor's product liability cause of action. Specifically, that court explained:

> **But after reconsidering <u>Alvarez</u>, the Court concludes that the inapplicability of the discovery rule was necessary to the Eleventh Circuit's holding.** The alleged malpractice was advising and filing a Chapter 7 bankruptcy instead of a Chapter 11 bankruptcy and failing to convert, resulting in the trustee selling assets at a price disagreeable to the debtor. <u>See In re Alvarez</u>, 224 F.3d at 1275; <u>In re Alvarez</u>, 228 B.R. 762, 763 (Bankr. M.D. Fla. 1998). The fight over ownership of the claim (malpractice arising from mishandling a bankruptcy case) occurred in the very bankruptcy proceeding that was the subject of the malpractice claim. Under these facts, the debtor necessarily discovered the injury and cause postpetition. **The discovery rule not applying is essential for the holding** — that the cause of action accrued as of the filing and thus was property of the estate — because there is no logical way the discovery rule could apply and the Court's holding stay the same. **Because <u>In re Alvarez</u> is binding on this Court, and thus all necessary elements of that decision are binding on this Court, <u>the Court can only conclude that the discovery rule does not apply to the present circumstances</u>. The Court will look to whether the elements of the product liability claim occurred before or after filing.** It is undisputed that everything, except for knowledge of cause, occurred prepetition. The Court thus holds that the product liability claim accrued prepetition and is estate property.

484 B.R. at 504-05 (emphasis added). Significantly, however, maritime law recognizes the "discovery rule" in determining the accrual of an asbestos-related claim. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason, the rationale of In re Webb is inapplicable to the case at hand, which is governed by maritime law (and under which, as explained earlier herein, Mr. Lawrence's malignancy claim did not accrue prior to the filing of either of his two bankruptcy petitions and is not sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate).

In re Salander involved a debtor's effort to pursue a claim against one of her creditors after her bankruptcy action was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held that the claim was property of the bankruptcy estate for either or both of two reasons: First, the court determined that, under New York law, her claim had accrued pre-petition (because she knew of the alleged forgery giving rise to her claim prior to the filing of her petition) and was, therefore, property of the bankruptcy estate. Id. at 46. In this regard, this case is inapplicable to Mr. Lawrence's situation, which is governed by maritime law, and for which there is no evidence of accrual of the non-malignancy claims until after the First Bankruptcy action was filed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). Second, the court found (without much

explanation) that, even if the debtor had not discovered the
extent of the alleged forgery at issue, the actions giving rise
to her claims (alleged fraudulent signing of documents) occurred
prior to the petition and were, therefore, "sufficiently rooted
in the pre-bankruptcy past." The factual scenario therein is
distinguishable from that of Mr. Lawrence's insofar as the fraud
(and accompanying harm) had occurred and existed pre-petition
regardless of whether and when they were discovered by Mrs.
Salander. In contrast, Mr. Lawrence's pre-petition asbestos
exposure did not necessarily result in an injury at all and,
instead, only resulted in injury upon the development of his
illness. As such, the crucial element of development of his
malignant illness occurred post-petition (and there is no
evidence in the record that its development may have occurred
pre-petition). As such, the rationale of In re Salander does not
lead to a conclusion that Mr. Lawrence's malignancy claims are
property of the First Bankruptcy estate – despite that fact that
the alleged asbestos exposure giving rise to those claims
occurred prior to the filing of the petition in the First or
Second Bankruptcy Action.

In re Strada Design Assocs., Inc. followed the same
rationale as In re Salander and its analysis explicitly turned
on the decision that formed the basis of In re Webb (Alvarez,
224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus,

for the same reasons that In re Salander and In re Webb did not lead to the conclusion that Mr. Lawrence's malignancy claims are property of the First and/or Second Bankruptcy estate, In re Strada does not either.

In short, none of the cases relied upon by Defendant support the conclusion that Mr. Lawrence's malignancy asbestos claims are property of the First or Second Bankruptcy estate. Applying the rationale of Segal, the Court concludes that, given the facts of the present case, and the standard set forth by maritime law for determining accrual of an asbestos cause of action (including, specifically, its utilization of the "discovery rule"), Mr. Lawrence's malignancy asbestos claims are not "sufficiently rooted in his pre-bankruptcy past to constitute property of either bankruptcy estate (pursuant to the exception to 11 U.S.C. § 541(a)(1) set forth in In re O'Dowd). Instead, the general rule of § 541(a)(1), as discussed in In re O'Dowd, 233 F.3d at 202 (limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Mr. Lawrence's malignancy asbestos claims (which did not accrue until after the First and Second Bankruptcy petitions were filed and those actions both closed) are, therefore, not property of the First or Second Bankruptcy trustee (and not subject to pursuit by creditors in either bankruptcy action). Accordingly, with respect to Mr. Lawrence's malignancy asbestos

claims, Defendants' motion for summary judgment on grounds that
they are property of the First and/or Second Bankruptcy estate
(because they are sufficiently rooted in the pre-bankruptcy
past) is denied. <u>Anderson</u>, 477 U.S. at 248-50.

## VI.   CONCLUSION

     For all of the reasons stated above, Defendants'
motion for summary judgment will be denied.[17]

     An appropriate order follows.

---

[17]     Defendants' motion for summary judgment on grounds of
judicial estoppel will be denied (with respect to <u>all</u> claims).

     With respect to Plaintiffs' <u>non-malignancy</u> claims,
Defendants' motion for summary judgment on grounds that the
First and/or Second Bankruptcy Trustee is the real party-in-
interest with ownership of these claims will be denied without
prejudice.

     With respect to Plaintiffs' <u>malignancy</u> claims,
Defendants' motion for summary judgment on grounds that the
First and/or Second Bankruptcy Trustee is the real party-in-
interest with ownership of these claims is denied.